# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOANNE DRZAL, | : |
| | : |
| Plaintiff, | : |
| | : Civil Action No. 18-10316 (FLW) |
| v. | : |
| | : **OPINION** |
| ANDREW SAUL, | : |
| Acting Commissioner of Social Security, | : |
| | : |
| Defendant. | : |
| | : |

**WOLFSON, United States District Judge:**

Joanne Drzal ("Plaintiff"), appeals from the final decision of the Acting Commissioner of Social Security, Andrew Saul ("Defendant") denying Plaintiff disability benefits under Tile II and Title XVI of the Social Security Act (the "Act"). After reviewing the Administrative Record, the Court finds that the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and, accordingly, it is affirmed.

## I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on January 10, 1967 and was 46 years old[1] on the alleged disability onset date of November 17, 2013. Administrative Record 16, 25 (hereinafter "A.R."). Plaintiff graduated from high school and completed two years of college. A.R. 39. Prior to her alleged disability, Plaintiff worked as a legal clerk and secretary. A.R. 43

On January 3, 2014 and July 2, 2014, Plaintiff applied for disability insurance benefits and supplemental security income, respectively, alleging disability beginning on November 17,

---

[1]     The regulations of the Social Security Administration state that "[t]he term younger individual is used to denote an individual 18 through 49." 20 C.F.R., Part 404, Subpart P, Appendix 2, § 201(h)(1). As such, at the time of her application, Plaintiff was considered a younger individual.

2013, on the basis of her mental ailments, including post-traumatic stress disorder, depression, and anxiety. A.R. 16. Plaintiff's claims were denied on December 8, 2014, and again upon reconsideration on February 28, 2015. A.R. 16. Thereafter, Plaintiff requested a hearing, which was held on June 6, 2017, before ALJ Meryl L. Lissek. A.R. 34. The ALJ determined that Plaintiff was not disabled, and denied her claims for disability insurance benefits and supplemental security income. A.R. 26-27. Plaintiff requested review by the Appeals Council, which was denied on April 9, 2018. A.R. 1-4. Thereafter, on June 8, 2018, Plaintiff filed the instant appeal.

### A.     Review of the Medical Evidence[2]

In a Social Security Disability Psychiatric Report, dated July 7, 2014, Florence Ruth ("Ms. Ruth"), a licensed clinical social worker ("LCSW"), indicated that she treated Plaintiff on a weekly basis from February 6, 2013 to July 3, 2014. A.R. 575. Therein, she summarized the results of a mental status examination from Plaintiff's last visit, during which Plaintiff was alert and oriented in all spheres; well-groomed; cooperative; had normal speech, and "good" concentration, memory, intellect, and judgment; denied suicidal or homicidal ideations; did not suffer from hallucinations or delusions; and exhibited a neutral mood and anxious affect. A.R. 576.

Ms. Ruth noted that Plaintiff was able to recall three out of three words immediately, and once again five minutes later; she performed serial fives "well"; she spelled the word "world" forward and backward; she counted numbers forward and backwards; and she tracked a conversation. A.R. 576. But, according to Ms. Ruth, Plaintiff's understanding, memory, sustained concentration, persistence, social interaction, and abilities to adapt to changes in the

---

[2]     The Court notes that numerous pages of the medical record consist of handwritten and poorly photocopied notes.

work setting were all "limited" "due to [her] condition." A.R. 578. Ms. Ruth diagnosed Plaintiff with post-traumatic stress disorder, anxiety, depression, and documented symptoms including fearfulness, chronic fatigue, and panic attacks lasting from 15 to 20 minutes in length. A.R. 575-77. Despite these limitations, Ms. Ruth found that, "with considerable effort," [Plaintiff] takes care of 8-year-old-son and home, manages money, drives a car, prepares meals and does shopping." A.R. 579.

On June 5, 2014, Ashwini Neelgund, M.D., performed an initial psychological evaluation on Plaintiff, assessing calm and cooperative behavior; fair appearance and grooming; normal orientation and psychomotor functioning; rapid and pressured speech; anxious mood; appropriate affect; logical, coherent, circumstantial, and tangential thought processes; and poor insight and judgment with no delusions, hallucinations, and suicidal/homicidal thoughts. A.R. 581-82. Dr. Neelgund diagnosed general anxiety disorder, depressive order, "other psychosocial and environmental problems," and he rendered a GAF[3] score of 45-50. A.R. 582. Notwithstanding his findings, Dr. Neelgund noted that Plaintiff was not interested in taking "psychiatric [medication] at this time" or an intensive outpatient treatment, as "she feels that she does not need higher level of care." A.R. 583.

On June 24, 2014, Ms. Roth wrote a letter to an unspecified recipient and explained that she had treated Plaintiff since February of 2013 for "tremendous emotional stress, anxiety, depression & fatigue[,]" and that "it seems that [Plaintiff] may need ongoing psychotherapy" for an indefinite period of time. A.R. 633-34. Ms. Roth listed Plaintiff's "traumatic" experiences,

---

[3] GAF is an acronym that refers to an individual's score on the Global Assessment of Functioning Scale. AM. PSYCHIATRIC ASS'N, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32 (4th ed. Text Revision 2000). In that connection, the scale is used as a tool which reflects the "clinician's judgment of [an] individual's overall level of functioning," in light of a patient's overall impairments in psychological, social, and occupational functioning. *Id.*

which included "being a domestic abuse victim," "a violent crime victim," "an incest victim," and a "Hurricane Sandy/Irene victim." A.R. 633. As a result, Ms. Roth concluded that Plaintiff required a one-year leave of absence from her work "to resolve, cope and deal with her personal life issues," and she noted that, because Plaintiff "is a newly single parent with an eight-year-old son," Plaintiff "has been unable to meet the demands of her personal life with her work life." A.R. 633-34.

On July 17, 2014, more than six weeks after her last visit, Dr. Neelgund treated Plaintiff, but he declined to sign her disability papers, because, as his medical progress notes indicate, Plaintiff "ha[d] been non-complaint with her treatment recommendations." A.R. 584. Upon examination, Plaintiff denied feeling anxious, depressed, manic, having difficulties with sleeping, obsessive thoughts, changes in her appetite and weight, problems with her memory and speech, and suffering from headaches, delusions, hallucinations, and suicidal/homicidal thoughts or ideations. A.R. 584-55. In addition, Plaintiff's mental status evaluation revealed the following results: fair appearance; good grooming; cooperative behavior; normal psychomotor functioning; responsive, talkative, and pressured speech; euthymic mood; appropriate affect; coherent and circumstantial thought processes; oriented cognition; and poor insight and judgment. A.R. 584-85.

In November 2014, Christopher Williamson, Psy.D., performed a mental status evaluation on Plaintiff at the request of the Administration. A.R. 600. During the evaluation, Plaintiff reported "ongoing issues of chronic depression and post-traumatic stress disorder," "a "longstanding history [of] domestic violence[,]" "issues of incest," and "panic attacks" resulting in "heart palpitations, difficulty breathing, and chest tightness," but she was not taking

medication for these issues. A.R. 600. Upon examination, Dr. Williamson rendered the following observations:

> She arrived on time as scheduled. She was casually dressed and groomed, appearing her stated age. She was cooperative throughout. She was noticeably guarded. She appeared physically and emotionally uncomfortable. She was noticeably verbose to the point where she had pressured speech. . . . There was no evidence of a formal thought disorder. There was no noted compulsions or thinking and/or behavior. Her overall mood appeared depressed and anxious.

A.R. 601. He continued:

> She has a history of suicidal ideation but denies any current plan or intent. . . . She could repeat up to 7 digits forward and 4 digits backwards. She could complete simple mathematical calculations of addition and subtraction. Her overall fund of knowledge appeared to be in the average range. Abstract reasoning appeared to be intact. She was well oriented to time, place, and person, as well as recent current events. She could recall 0 out of 3 objects at 5- and 10-minute intervals.

A.R. 602. Based on his evaluation, Dr. Williamson diagnosed Plaintiff with post-traumatic stress disorder, bipolar disorder (mixed type), and generalized anxiety disorder with panic attacks. A.R. 602. In his concluding remarks, Dr. Williamson noted that Plaintiff is "competent to handle her own funds[.]" A.R. 602.

On December 2014, Dr. Joan F. Joynson, a State agency medical consultant, conducted an independent examination of Plaintiff's medical records. A.R. 84. Dr. Joynson began with a formal assessment of Plaintiff's functional limitations, documenting the following observations: mild difficulties in maintaining social functioning and performing activities of daily living; moderate difficulties in maintaining concentration, persistence, or pace; no episodes of decompensation for an extended duration of time. A.R. 84. Dr. Joynson also examined Plaintiff's ability to perform mental activities over the course of a normal workday and workweek.

According to Dr. Joynson, Plaintiff had no limitations with respect to her understanding or memory, interacting with coworkers and authorities in the workplace, and adapting to workplace changes. A.R. 85.

Dr. Joynson also found that Plaintiff was not significantly limited in her capacity to perform the following tasks: carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; and make simple work-related decisions. On the other hand, Dr. Johnson noted that Plaintiff was moderately limited in her capacity to perform the following tasks: complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. A.R. 86.

In her concluding remarks, Dr. Joynson noted: "[Plaintiff] denies panic attacks or severe [symptoms] of [post-traumatic stress disorder] and does not want [psychiatric] medications. . . . [Plaintiff] has a high level of functioning, cares for her 10 year old, pays for someone to mow her lawn, she shops, manages finances, uses the computer, she is very high functioning. . . . [Plaintiff] is able to sustain [concentration, persistence, and pace] for simple work functions." A.R. 86.

On February 20, 2015, Sharon Flaherty, Ph.D., a second State Agency medical consultant, conducted an independent review of Plaintiff's medical records and rendered the following assessment of Plaintiff's functional limitations: mild difficulties in performing activities of daily living; moderate restrictions in maintaining social functioning and maintaining

concentration, persistence, or pace; no episodes of decompensation for an extended duration of time. A.R. 111.

On February 10, 2015, Pauline Nelson, Psy.D., completed a Social Security Disability Psychiatric Report, wherein she indicated that she treated Plaintiff on three separate occasions. A.R. 589. The report included the results of Plaintiff's last mental status examination that Dr. Nelson performed on November 10, 2014, during which Plaintiff was alert; oriented in all three spheres; in touch with reality; her mood was euthymic; her affect was anxious and depressed; she was neatly groomed but fidgeted nervously; her speech was normal; she had "normal to above" intellect; and she exhibited good judgment. A.R. 590. Dr. Nelson also examined Plaintiff's ability to perform certain work related mental activities, and she rendered the following conclusions: no limitations in adapting to changes in the work place, recognizing hazards, traveling/using public transportation, setting realistic goals, and making independent plans; and some limitations in understanding and memory, sustained concentration and persistence, and engaging in social interactions because of her "worried thoughts." A.R. 592. Dr. Nelson diagnosed Plaintiff with generalized anxiety disorder and post-traumatic stress disorder, and she noted that Plaintiff suffered from "period panic attacks" that could interfere with her functioning, occurred "when [her] safety is threatened," and lasted between five and thirty minutes. A.R. 589, 591.

On January 15, 2015, Beth Maguire, LCSW, performed a mental status evaluation on Plaintiff, during which she exhibited a normal or labile mood; appropriate or sad affect; fair insight; fair judgment; normal orientation; normal or remote memory; alertness; unremarkable posture; normal gait; normal motor activities; normal or loose thought processes with normal thought content; cooperative behavior; spontaneous and verbose speech; and appropriate attire.

A.R. 608. Ms. Maguire diagnosed Plaintiff with anxiety, adjustment disorder, and post-traumatic stress disorder and fatigue. A.R. 611. Plaintiff also agreed to attend weekly group therapy sessions and indicated that she was "open to possibility of medication and will consult with psychiatrist." A.R. 610.

On June 5, 2017, Russell Holstein Ed.D. drafted a letter summarizing his treatment of Plaintiff stating: "[i]n my treatment of [Plaintiff], she continues to speak about her husband who has, on more than one occasion, abused her, such that she has gotten a restraining order against him. However, she is very much against terminating the marriage, in part because [of] her situation as a single mother with very limited opinion, and without disability money, is struggling to maintain a household for herself and her son. . . . . The focus on our therapy is on the damned if you do, and damned if you don't situation involving her husband . . . . A.R. 642. Dr. Holstein also noted that, although Plaintiff was experiencing a "difficult psychological situation" which could result in "prolonged and difficult suffering," she "was not eager to take psychoactive medication, as she does not necessarily feel that the medications would help her." A.R. 642

In another correspondence, dated June 12, 2017, Dr. Holstein provided the following explanation: "[i]n [a] previous note, I described the psychological dilemma behind [Plaintiff's] current situation involving both anxiety and depression. A.R. 646. "The tension behind the situation is such that Ms. Drzal is currently unable to work." A.R. 646. Indeed, according to Dr. Holstein, "[a]t the present time, [Plaintiff's] commitment as a single parent to her son, as well as her desire to try to keep the possibility of a marriage with a very impaired man, prevents her from really being able to devote her energies to a job. Her sense of preoccupation about her personal life and her personal situation would preclude her ability to maintain a substantial,

gainful employment at the present time." A.R. 646. However, Dr. Holstein concluded his correspondence with the following remarks: "[i]t would be my expectation that is she could achieve some greater stability in life, and when her son is more independent, that a return to work would certainly not only be possible, but desirable." A.R. 646.

### B.     Review of Testimonial Record

Plaintiff appeared and testified at a hearing in this matter, held on June 6, 2017, before the ALJ. A.R. 34-62. Plaintiff testified that she was 50 years old, and that she had worked for the IRS for 25 years, performing clerical, legal assistant, and secretarial work. A.R. 39-40. Plaintiff alleged that her work consisted of assisting attorneys with "typing assignments, filing, closing case files, opening case files, working on a computer," and "assisting analysts." A.R. 40-42. Plaintiff stated that, at times, she acted as a supervisor and assigned work to other employees. A.R. 42.

Plaintiff testified that she would not be able to sustain a job, because she would be "distracted, unable to concentrate," and could "complete tasks on occasion" because of her anxiety and the "thoughts that creep up from [her] past [that] continue to be part of [her] life," including her troublesome marriage. A.R. 44. Plaintiff stated that she "need[ed] to take a break." A.R. 44.

Plaintiff stated that, starting in February 2017, she received treatment from Dr. Holstein once a week. A.R. 45. Plaintiff acknowledged that the record did not contain Dr. Holstein's treatment notes, and testified that she, instead, submitted a recent "dictated letter [from Dr. Holstein" that summarized her "situation." A.R. 45. Plaintiff also admitted that she could not provide treatment notes from her sessions with Dr. Ganzon in 2013, another provider from whom

she sought medical treatment, because those documents were destroyed during Hurricane Sandy. A.R. 46.

Plaintiff also explained that, before she had found Dr. Holstein, she was "trying to find a therapist and [she] wasn't able to find one who took Medicaid who [she] had a good enough rapport[.]"A.R. As a result, Plaintiff stated that she stopped seeking treatment and, instead, "did sort of my own type of self-therapy by trying to get support online[.]" A.R .47. In addition to her treatment for mental health, Plaintiff testified that she sees her "breast surgeon periodically because [she] was diagnosed with breast cancer and also the hematologist for blood work." A.R. 47. Plaintiff, nonetheless, clarified that she was "not claiming any exertional limitations." A.R. 50.

When asked how she felt, Plaintiff stated that she was "better." A.R. 54. Plaintiff explained that she was "less afraid" and less anxious. A.R. 55. Plaintiff testified that, although she suffers from chronic fatigue, she was capable of preparing breakfast for herself and her son, driving her son to school, food shopping, cleaning the house, doing laundry, spending time on the computer, and handling her bills A.R. 55-56. Plaintiff alleged that she takes "tamoxifen," but no medications for her mental health. A.R. 55. Plaintiff mentioned that she had never been hospitalized for psychiatric reasons. A.R. 55-56.

### C.    ALJ's Findings

The ALJ issued a written decision, following the hearing, on September 11, 2017, and applied the standard five-step process to determine if Plaintiff had satisfied her burden of establishing disability. A.R. 16-32. First, the ALJ found that Plaintiff had not engaged in substantial gainful activity since November 17, 2013, the alleged onset date, and throughout the relevant period. A.R. 19.

Second, the ALJ found that Plaintiff had the following severe impairments: "post-traumatic stress disorder (domestic violence survivor, violent crime survivor, and hurricane Sandy victim survivor), anxiety, depression and fatigue. A.R. 19. Third, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. part 404, subpart P, app. 1. A.R. 26-27. Moreover, in this step, the ALJ considered Plaintiff's medical impairments under listings 12.04, 12.06, and 12.15, and found that the paragraph B and C criteria for those listings were unsatisfied. A.R. 19.

Fourth, the ALJ determined that Plaintiff retained the residual function capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: "she can have occasional contact with supervisors and minimal contact with the general public. She can work in proximity of co-workers but not together with them. She can work in jobs that do not involve many work related decisions. Based on psychiatric symptoms and fatigue, the claimant will be off task 5% of an eight hour day and absent one time per month." A.R. 20-21.

Fifth, the ALJ found that, taking into consideration Plaintiff's age, education, work experience, and residual functional capacity, "there are jobs that exist in significant numbers in the national economy that the claimant can perform."  A.R. 25.  In reaching this determination, the ALJ relied on the testimony of a vocational expert that an individual with Plaintiff's age, education, past relevant work experience, and residual functional capacity could perform the following representative occupations: Garment Folder DOT# 789.687-066; Labeler DOT# 920.687-126; and Ticket Tagger DOT# 652.685-094, which the vocational expert testified existed in the regional economy and national economy in the aggregate amount of 280,000. A.R.

26.

**II.    STANDARD OF REVIEW**

On a review of a final decision of the Commissioner of the Social Security Administration, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive on a reviewing court if supported by "substantial evidence in the record." 42 U.S.C. § 405(g); *see Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). While the court must examine the record in its entirety for purposes of determining whether the Commissioner's findings are supported by substantial evidence, *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978), the standard is highly deferential. *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Indeed, "substantial evidence" is defined as "more than a mere scintilla," but less than a preponderance. *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004). "It means such relevant evidence as a reasonable mind might accept as adequate." *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999). A reviewing court is not "empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992), *cert. denied*, 507 U.S. 924 (1993). Accordingly, even if there is contrary evidence in the record that would justify the opposite conclusion, the Commissioner's decision will be upheld if it is supported by the evidence. *See Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986).

Disability insurance benefits may not be paid under the Act unless Plaintiff first meets the statutory insured status requirements. *See* 42 U.S.C. § 423(c). Plaintiff must also demonstrate

the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A); *see Plummer*, 186 F.3d at 427. An individual is not disabled unless "his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). Eligibility for supplemental security income requires the same showing of disability. *Id.* at § 1382c (a)(3)(A)-(B).

The Act establishes a five-step sequential process for evaluation by the ALJ to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. First, the ALJ determines whether the claimant has shown that he or she is not currently engaged in "substantial gainful activity." *Id.* at § 404.1520(a); *see Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *See* 20 C.F.R. § 404.1520(b); *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 146-47 n.5. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1521(b). These activities include physical functions such as "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling." *Id.* A claimant who does not have a severe impairment is not considered disabled. *Id.* at § 404.1520(c); *see Plummer*, 186 F.3d at 428.

Third, if the impairment is found to be severe, the ALJ then determines whether the

impairment meets or is equal to the impairments listed in 20 C.F.R. Pt. 404, Subpt. P., App. 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates that his or her impairments are equal in severity to, or meet those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See id.* at § 404.1520(d); *see also Bowen*, 482 U.S. at 146-47 n.5. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526(a). If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams*, 970 F.2d at 1186.

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e); *Bowen*, 482 U.S. at 141. If the claimant is able to perform previous work, the claimant is determined to not be disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e); *Bowen*, 482 U.S. at 141-42. The claimant bears the burden of demonstrating an inability to return to the past relevant work. *Plummer*, 186 F.3d at 428. Finally, if it is determined that the claimant is no longer able to perform his or her previous work, the burden of production then shifts to the Commissioner to show, at step five, that the "claimant is able to perform work available in the national economy." *Bowen*, 482 U.S. at 146-47 n.5; *Plummer*, 186 F.3d at 428. This step requires the ALJ to consider the claimant's residual functional capacity, age, education, and past work experience. 20 C.F.R. § 404.1520(f). The ALJ must analyze the cumulative effect of all

the claimant's impairments in determining whether the claimant is capable of performing work and not disabled. *Id.*

## III. PLAINTIFF'S CLAIMS ON APPEAL

Plaintiff makes four arguments on appeal as to why the ALJ's disability determinations were unsupported by substantial credible evidence. First, Plaintiff argues that the ALJ erred by failing to accord adequate weight to the opinions of her treating physicians. Second, Plaintiff contends the ALJ erred in evaluating her credibility. Third, Plaintiff avers that the ALJ erred in assigning "little weight" to an IRS award of disability benefits to Plaintiff. Fourth, Plaintiff maintains that the ALJ failed to evaluate her nonexertional limitations in accordance with SSR96-9P. Each argument is addressed in turn.

### A.    Opinion Evidence

First, Plaintiff argues that the ALJ failed to accord adequate weight to the opinions of her treating providers, including Dr. Holstein, Dr. Nelson, and Ms. Florence. Plaintiff's Brief, at 10. I disagree.

At step four, the ALJ is required to formulate a claimant's RFC. *See Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) ("The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations."). In performing this inquiry, "the ALJ must consider all evidence before him," and, while the ALJ may weigh the credibility of the evidence, the ALJ must also provide "some indication of the evidence which he rejects and his reason(s) for discounting such evidence." *Burnett v. Comm'r of Social Sec. Admin.*, 220 F.3d 112, 121 (3d. Cir. 2000); *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981); *Goldberg v. Colvin*, No. 13-6055, 2015 U.S. Dist. LEXIS 31012, at *24-25 (D.N.J. Mar. 13, 2015).

In "the absence of such an indication, the reviewing court cannot tell if significant

probative evidence was not credited or simply ignored." *Cotter*, 642 F.2d at 705. Thus, the failure to indicate whether contradicting evidence was considered, or to also provide a basis for rejecting such evidence warrants remand; however, the ALJ need not examine "every relevant treatment note" in rendering a decision. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 435 (3d Cir. 1999); *Fargnoli v. Halter*, 247 F.3d 34, 42 (3d Cir. 2001). "Where the ALJ's findings of fact are supported by substantial evidence, [courts] are bound by those findings, even if [one] would have decided the factual inquiry differently." *Hagans v. Comm'r of Soc. Sec.*, 694 F.3d 287, 292 (3d Cir. 2012).

With respect to opinion evidence, a determinable impairment must be established by "acceptable medical sources, defined to only include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. *See* 20 CFR 404.1513; 20 CFR 416.913. That is, licensed clinical social workers, such as Ms. Ruth in this case, are not acceptable medical sources, but are instead classified as "other sources" pursuant to the regulations. As such, findings from other sources may be used for the limited purpose of demonstrating "the severity of [a claimant's] impairment," and, if applicable, their opinions should be evaluated pursuant to those factors which are used to weigh opinion evidence.[4] Indeed, the ALJ "generally should explain the weight given to opinions from these 'other sources' in a manner which "allows a claimant or subsequent reviewer to follow the adjudicator's reasoning[.]" *See* SSR 06-03(p).

---

[4]     These factors include: "[h]ow long the source has known and how frequently the source has seen the individual; [h]ow consistent the opinion is with other evidence; [t]he degree to which the source presents relevant evidence to support an opinion; [h]ow well the source explains the opinion; [w]hether the source has a specialty or area of expertise related to the individual's impairment(s), and; [a]ny other factors that tend to support or refute the opinion. *See* SSR 06-03(p).

Moreover, under the regulations, a treating source's opinion will be given controlling weight if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(c)(2). Several factors may also be used to determine the weight given to a medical opinion, including: length of treatment relationship, the nature and extent of the treatment relationship, supportability by medical evidence, and consistency with the record as a whole. *Id*. When a treating source's opinion conflicts with that of a non-treating source, "the ALJ may choose whom to credit but cannot reject evidence for no reason or for the wrong reasons." *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000). Indeed, the ALJ must rely only on "contradictory medical evidence" in rejecting the treating source's opinion, and, as another requirement, provide "an explanation of the reasoning behind [her] conclusions," including "reason(s) for discounting rejected evidence." *Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001); *Morales*, 225 F.3d at 317.

Here, the ALJ complied with the pertinent social security regulations in attributing minimal weight to Ms. Ruth's opinions, a LCSW, who provided a Social Security Disability Psychiatric Report, dated May 1, 2014, on behalf of Plaintiff. In the report, Ms. Ruth indicated that, because of her "condition," Plaintiff would be limited in her abilities to perform various work-related activities, including understanding, interacting with others, maintaining adaptive functioning, and sustaining concentration and persistence. A.R. 578. However, the ALJ assigned little weight to these findings, noting that Ms. Ruth is an "unacceptable medical source," such that her opinion cannot establish a medically determinable impairment. A.R. 23. The ALJ also held that the report was "vague," "unsupported by more than a general explanation[,]" and inconsistent with her findings that Plaintiff was capable of managing her own benefits. A.R. 23.

And, although Ms. Ruth's Report indicated that she had treated Plaintiff since February 2013, the ALJ explained that "no records of those appointments" existed. A.R. 23.

Tellingly, Plaintiff does not raise a specific argument as to the ALJ's assessment of Mr. Ruth's findings, but rather contends that the ALJ's decision fails to provide an adequate basis for review. However, in contrast to Plaintiff's position, the Court finds that the ALJ rendered a decision in which she provided an adequate explanation for discrediting Ms. Ruth's determinations. Indeed, after appropriately noting that Ms. Ruth was not an acceptable medical source, the ALJ provided additional reasons for discrediting her findings. In that regard, the ALJ determined that Ms. Ruth's conclusions were inconsistent, unclear, and unsupported, as the record did not contain a single treatment note from her sessions with Plaintiff. *Wimberly v. Barnhart*, 128 Fed. Appx. 861, 863 (3d Cir. 2005) (holding that the ALJ did not err by refusing to accord controlling weight to an opinion which "was itself internally inconsistent."). Therefore, based on these reasons, the ALJ's assessment of Ms. Ruth's source opinion does not warrant remand.

In addition, Plaintiff argues that the ALJ erred in assigning "some weight" and "little weight" to the opinions of Plaintiff's treating physicians, including Dr. Nelson's Social Security Disability Psychiatric Report, dated February 10, 2015, and Dr. Holstein's letters from June 2017. Plaintiff's Brief, at 13-14. However, I find that the ALJ complied with the pertinent social security regulations in attributing minimal weight to the opinions of Plaintiff's treating physicians.

First, Dr. Nelson's Social Security Disability Psychiatric Report indicated that she had treated Plaintiff on no more than three separate occasions, and she opined that Plaintiff suffered from no more than "some" limitations with respect to her abilities to engage in work related

mental activities, including understanding, sustaining concentration and persistence, and interacting with others. A.R. 592. Moreover, according to Dr. Nelson, Plaintiff exhibited no limitations in adapting to changes in the work place, recognizing hazards, traveling/using public transportation, setting realistic goals, and making independent plans. A.R. 592. However, while the ALJ assigned "some weight" to these findings, she concluded that she could not accord them more weight, based on the short length of Dr. Nelson's treatment relationship with Plaintiff, and her "vague" determinations, which were supported with no more than a "cursory explanation." A.R. 24.

Second, in his letters, Dr. Holstein opined that Plaintiff was unable to work at the time of treatment because of Plaintiff's preoccupation with her personal life, but that, if she were able to achieve a greater degree of stability, "a return to work would certainly not only be desirable, but quite possible." A.R. 646. However, in assigning little weight to Dr. Holstein's opinion, the ALJ noted that it was inconsistent with the testimony that Plaintiff provided at her hearing, during which she stated that her therapist was encouraging her to attempt to work part-time. A.R. 24. In addition, the ALJ explained that Dr. Holstein's statement presented an assessment of the Plaintiff's current functioning, instead of a long-term assessment of the her work-related functional limitations, and that he was opining on an issue which was reserved for the Commissioner. A.R. 24.

Here, the ALJ appropriately discounted Dr. Nelson's medical findings. As to Dr. Nelson's determinations with respect to Plaintiff's concentration, attention, and persistence capabilities, the ALJ explained that there was no evidence to support that she had reported these problems on a consistent basis, as the record revealed large gaps in treatment. In fact, the ALJ noted that these findings were in conflict with Plaintiff's own statements to Dr. Nelson, as she

had reported that she "rarely" felt unable to concentrate. A.R. 597. And, the ALJ also referenced certain mental status exams, during which Plaintiff's concentration was "intact," and she performed simple mathematical calculations and other related cognitive tasks. To the extent that Plaintiff disagrees with the reasons for discrediting the opinion of Dr. Nelson, it is axiomatic that such grounds fail to provide an appropriate basis for appeal, because reviewing "courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler.*, 667 F.3d at 359.

In addition, the ALJ did not err in assigning little weight to Dr. Holstein's opinion. As the ALJ noted, Dr. Holstein did not provide, for example, a functional assessment of Plaintiff's abilities to perform specific work related tasks, on the basis of clinical diagnostic medical techniques. Rather, Dr. Holstein opined on Plaintiff's overall inability to work; but, as the applicable regulations provide, "[s]tatements by a physician that a claimant is or was 'unable to work,' . . . are not 'medical opinions' but instead are 'opinions on issues reserved to the Commissioner[.]'" *Roberts v. Comm'r of Soc. Sec.*, No. 09-2211, 2010 U.S. Dist. LEXIS 47132, at *35 (D.N.J. 2010) (quoting 20 C.F.R. § 404.1527(e)(1)). Therefore, because this determination was within the province of the ALJ, she was not required to accept Dr. Holstein's assessment of Plaintiff's overall ability to work. Indeed, opinions of that nature are "not the sort of treating source medical opinion[s] entitled to any kind of weight." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 203 n. 2 (3d Cir. 2008); *Taylor v. Barnhart*, 474 F. Supp. 2d 650, 662 (D. Del. 2007) ("It is within the ALJ's lone discretion to determine whether an individual is disabled or 'unable to work' under the statutory definition."); *see also Roberts*, 2010 U.S. Dist. LEXIS 47132, at *35.

As an additional basis to reject the opinions of Plaintiff's treating physicians, the ALJ

referenced the state medical agency consultants' findings, both of whom determined that Plaintiff was able to sustain concentration, persistence, and pace for simply work functions, and that she could understand and follow moderately complex instructions. Significantly, the medical determinations of the state agency consultants with respect to Plaintiff's abilities are consistent with the ALJ's RFC, which limits her to jobs that do not require her to perform "many work related decisions."[5] Therefore, based on these circumstances, in total, the Court holds that the ALJ did not err in discrediting the opinions of Plaintiff's treating physicians. See *Craig v. Comm'r of Soc. Sec.*, No. 13-4454, 2014 U.S. Dist. LEXIS 164064, at *30 (D.N.J. Nov. 21, 2014) ("If, however, a treating physician's opinion is contradicted by other medical evidence in the record, including the opinion of a non-treating physician, the ALJ may accept the most credible medical opinion.") (*citing Plummer*, 186 F.3d at 429); see also *Schmits v. Astrue*, No. 08-1971, 2009 U.S. Dist. LEXIS 48182, at *23 (D.N.J. June 9, 2009) ("Furthermore, given the well-delineated contradictory medical evidence identified by the ALJ in her opinion, the Court finds that the ALJ was entitled to accept the most credible medical opinion, even if provided by . . . a non-treating physician").

**B.    Plaintiff's Credibility**

Second, Plaintiff argues that the ALJ failed to appropriately evaluate her subjective complaints as to the severity of her impairments. Plaintiff's Brief, at 14-17. Plaintiff's position lacks merit.

---

[5]    I note that, although the State agency consultants rendered their opinions before Dr. Holstein treated Plaintiff, Plaintiff does not contend that their determinations were unreliable for this reason. Nonetheless, the ALJ was not required to accept Dr. Holstein's opinion, as explained *supra*. Also, Plaintiff did not provide any medical evidence to show that her mental impairments significantly changed between the time the State agency consultants reviewed Plaintiff's medical condition and when Dr. Holstein treated Plaintiff. In fact, based on the record, Plaintiff's mental condition remained relatively consistent.

The Third Circuit has held that credibility determinations are entitled to a significant amount of deference on appeal. *See Hoyman v. Colvin*, 606 Fed. Appx. 678 (3d Cir. 2015) ("The credibility determinations of an administrative judge are virtually unreviewable on appeal.") (citation omitted); *see also Reefer v. Barnhart*, 326 F.3d 376, 380 (3d Cir. 2003) (stating that courts "ordinarily defer to an ALJ's credibility determination because he or she has the opportunity at a hearing to assess a witness' demeanor."); *see also Izzo v. Comm'r of Soc. Sec.*, 186 Fed. Appx. 280, 286 (3d Cir. 2006) (finding that "a reviewing court typically defers to an ALJ's credibility determination so long as there is a sufficient basis for the ALJ's decision to discredit a witness.").

A claimant's subjective symptoms must be corroborated by objective medical evidence; *i.e.*, evidence of a medically determinable impairment that can reasonably be expected to produce the claimant's underlying symptoms. *See Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (citing 20 C.F.R. § 404.1529). The most recent Social Security Ruling within this context, SSR 16-3p, 2016 SSR LEXIS 4, effective March 28, 2016, describes a two-step process that ALJs are required to follow in evaluating a claimant's statements about symptoms. SSR 16-3p, 2016 SSR LEXIS 4 at *3; *Hopper v. Saul*, No. 18-1799, 2019 U.S. Dist. LEXIS 119889, at *40 (D.N.J. July 16, 2019).

First, the ALJ "must consider whether there is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms, such as pain." SSR 16-3p, 2016 SSR LEXIS 4 at *3. "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce an individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-

related activities. . ." *Id.*; *see also Mirza v. Saul*, No. 18-0185, 2019 U.S. Dist. LEXIS 109748, at *27 (D.N.J. June 28, 2019).

If the ALJ finds that the objective medical evidence does not substantiate the claimant's testimony about his or her symptoms, then the ALJ is required to make a determination on the basis of the entire record by considering: (1) The claimant's daily activities; (2) the location, duration, frequency and intensity of the claimant's pain or other symptoms; (3) precipitating or aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; (6) any measures the claimant uses or has used to relieve pain or other symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vii).

Here, in accordance with the applicable regulations, and based on the medical evidence, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the . . . alleged symptoms." A.R. 22. However, the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in record." A.R. 22. In rendering that determination, the ALJ first explained that Plaintiff's "limited medical treatment" was inconsistent with her complaints of "debilitating impairment." A.R. 22. Indeed, the ALJ emphasized that the medical evidence failed to show that Plaintiff "regularly engaged in treatment until February 2017[,]" prior to which she declined to seek outpatient treatment, because, in Plaintiff's view, she did not require a "higher level of care." A.R. 22. Moreover, the ALJ referenced multiple occasions on which Plaintiff stopped seeing a provider altogether, or

failed to return for a follow-up visit. A.R. 22. These considerations, which were set forth in the ALJ's decision, constituted an appropriate basis to discredit Plaintiff's subjective complaints. *See* SSR 16-3p, 2016 SSR LEXIS 4 ("[I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record.").

In addition, the ALJ reasoned that the limiting effects of Plaintiff's complaints were inconsistent with her activities of daily living. Indeed, as the ALJ found, Plaintiff's allegations were undermined by those activities, which included caring for herself and son without assistance from others, handling the bills, preparing breakfast for herself and her son, driving her son to school, cleaning the house, doing laundry, food shopping, and spending time on the computer to research potential support groups. A.R. 20. Moreover, the ALJ noted that multiple examinations characterized Plaintiff as neatly groomed, further supporting that she could care for herself. A.R. 20. These grounds, too, constituted an appropriate basis to discredit the extent of Plaintiff's complaints. *Schmidt v. Comm'r Soc. Sec.*, 465 Fed. Appx. 193, 198 (3d Cir. 2012) (finding that the plaintiff's activities of daily living were inconsistent with his subjective complaints of disabling pain); *Morel v. Colvin*, No. 14-2934, 2016 U.S. Dist. LEXIS 44347, at *13 (D.N.J. April 1, 2016) (concluding that the record supported the ALJ's decision to discredit the plaintiff's subjective complaints, where the plaintiff was "able to independently care for her personal needs, "serve[] as the primary caregiver for her teenaged son," prepare meals, and clean the house.).

As another basis to discredit the Plaintiff's complaints, the ALJ explained that Plaintiff was not on medication other than medication for her breast cancer, which did not cause her side effects. A.R. 22. In addition, the ALJ, again, referenced the determinations of the state agency consultants, both of whom, as explained above, concluded that Plaintiff could, in contrast to Plaintiff's testimony, sustain concentration, persistence or pace for simple work functions. Therefore, in discounting Plaintiff's subjective complaints, the record indicates that the ALJ considered them in light of the available medical evidence, and the applicable regulations and factors that govern such a decision. As such, the ALJ's decision to discount Plaintiff's own subjective complaints was based on substantial evidence.

### C.    IRS Benefits

Third, Plaintiff contends that the ALJ committed error in failing to assign substantial weight to the IRS's determination that Plaintiff was disabled from a prior employment position as a legal assistant. Plaintiff's Brief, at 17-19. However, Plaintiff's argument fails to persuade me.

While the Third Circuit has found that "a determination by another governmental agency is entitled to substantial weight[,] *Kane v. Heckler*, 776 F.2d 1130, 1135 (3d Cir. 1985), that agencies' decision is, nevertheless, not binding on the ALJ. *See* 20 C.F.R. §§404.1504, 416.904; *see also Pratts v. Comm'r of Soc. Sec.*, No. 13-2372, 2015 U.S. Dist. LEXIS 116452 at *40 (D.N.J. Sept. 1, 2015); *Alston v. Astrue*, No. 10-839, 2011 U.S. Dist. LEXIS 115031, at *5 (W.D. Pa. Oct. 5, 2011). Therefore, an ALJ can accord less weight to another governmental agencies' decision, as long as the ALJ "sets forth specific and valid reasons for doing so and that those reasons are supported by substantial evidence of record." *Solomon v. Saul*, No. 18-1443, 2020 U.S. Dist. LEXIS 14420, at *6 (W.D. Pa. Jan. 29, 2020); *Scott v. Astrue*, No. 06-2541, 2007 U.S.

Dist. LEXIS 42928, at *22 (E.D. Pa. June 13, 2007) ("[T]he ALJ may properly reject another agency's findings if he/she explains his/her decision."); *see also Pratts*, 2015 U.S. Dist. LEXIS 116452 at *40.

Here, in assigning little weight to the IRS's determination, the ALJ provided two specific reasons for discounting the award of benefits, explaining: "[f]indings of other federal agencies are non binding upon the Social Security Administration and there is no function-by-function assessment of the claimant's work related limitations." *See* §§ 404.1504, 416.904 (holding that "a decision by any other governmental agency about whether [a claimant is] disabled . . . or entitled to any benefits is based on its [own] rules, [and] it is not binding on" the Social Security Administration). Significantly, an award of benefits from other governmental agencies that do not include a function-by-function assessment is sufficient to discount those agencies disability determinations. *Solomon*, 2020 U.S. Dist. LEXIS 14420, at *6 (holding that the ALJ appropriately discounted another agencies' disability determination that "did not contain function-by-function limitations."). Thus, the ALJ did not commit error in discounting the IRS's disability determination.

**D.      SSR96-9P**

Fourth, Plaintiff argues that the ALJ failed to act in accordance with SSR96-9P, because she did not evaluate her nonexertional impairments. Specifically, SSR96-9P addresses a claimant's ability to do less than a full range of sedentary work, and provides that the individual must be able to remain in a seated position for approximately six hours of an eight-hour workday in order to perform a full range of sedentary work. SSR 96-9p, 1996 SSR LEXIS 6. Here, because the ALJ found that Plaintiff was capable to perform to a "full range of work at all exertional levels," SSR 96-9p is inapplicable to the case at hand. *See Hans v. Astrue*, No. 11-374,

2011 U.S. Dist. LEXIS 149208, at *29 (E.D. Pa. Nov. 29, 2011) ("SSR 96-9p applies only when a claimant is limited to sedentary work."); *Johnson v. Astrue*, No. 10-30169, 2011 U.S. Dist. LEXIS 131217, at *18 (D. Mass Nov. 9, 2011) ("SSR 96-9p . . . applies only to sedentary work.") Therefore, this ground fails to provide a basis for remand.

## IV.    CONCLUSION

For the reasons set forth above, the Court finds that the ALJ's decision was supported by substantial evidence in the record. Accordingly, the ALJ's decision is affirmed. An appropriate Order shall follow.

/s/ Freda L. Wolfson
Freda L. Wolfson
U.S. Chief District Judge